CINCINNATI BAR ASSOCIATION *v*. HARTKE.

[Cite as *Cincinnati Bar Assn. v. Hartke,* 132 Ohio St.3d 116, 2012-Ohio-2443.]

*Attorneys—Misconduct—Threatening criminal action to gain advantage in civil matter—Engaging in conduct adversely reflecting on fitness to practice law—Six-month suspension.*

(No. 2011-1774—Submitted December 7, 2011—Decided June 6, 2012.)

ON CERTIFIED REPORT of the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 11-003.

_____

**Per Curiam.**

{¶ 1} Respondent, James R. Hartke, Attorney Registration No. 0011584, was admitted to the practice of law in Ohio in 1973. On February 14, 2011, relator, the Cincinnati Bar Association, filed a complaint charging Hartke with violations of Prof.Cond.R. 1.2(e) and 8.4(h). The Board of Commissioners on Grievances and Discipline ("board") concluded that Hartke had violated the aforementioned rules and recommended that Hartke be suspended from the practice of law for a period of six months, with the entire suspension stayed. Hartke filed no objections. After reviewing the record, we hold that Hartke's actions merit a six-month suspension.

I. Misconduct

{¶ 2} The relator and Hartke stipulated to certain facts. The parties then filed a "consent to discipline" agreement in which they agreed that Hartke had committed the alleged violations, that certain mitigating and aggravating factors were present, and that a six-month stayed suspension and mandatory anger-management counseling would be an appropriate sanction. A panel of the board

rejected the proposed consent-to-discipline agreement, and the matter proceeded to a hearing.

{¶ 3}    The evidence from the parties' stipulations establishes that in 2009, Jacqueline Usher retained Hartke to represent her in her divorce.  By October 2009, Usher owed Hartke over $5,000 in legal fees.  In February 2010, Usher and Hartke agreed that Hartke would accept one half of the distribution that Usher received from her ex-husband's 401(k) plan as complete satisfaction of the legal fees that Usher owed Hartke.  They agreed that the check issued from the pension account would be made out jointly to Usher and Hartke.

{¶ 4}    Later that February, Usher met with another attorney to discuss the possibility of filing for bankruptcy.  That attorney told Usher that the fees she owed Hartke were dischargeable in bankruptcy.  However, Usher never told Hartke that she was considering filing for bankruptcy, because she was afraid of him and how he might react.

{¶ 5}    In April 2010, the qualified domestic-relations order dividing Usher's ex-husband's 401(k) plan was approved, and she requested that the check for the proceeds be made out to her alone.  In April 2010, Usher received the proceeds but did not pay Hartke.

{¶ 6}    Hartke began calling Usher to determine the status of the distribution, but Usher refused to answer his calls.  She eventually disconnected her home phone and changed her cell-phone number.

{¶ 7}    However, this did not deter Hartke; in June 2010, he called Usher at work.  When Hartke was told that Usher was sick, he went to her apartment. There he confronted Usher, who was with her six-year-old daughter.  Hartke admitted that he was angry at this time.  A heated discussion ensued when Hartke demanded that Usher pay his fees.  When it became clear that Usher would not pay, Hartke threatened her with criminal action.  Hartke insisted that Usher go to

the bank and withdraw funds to pay his fee. Usher went to the bank, but was so upset that tellers escorted her to the back of the bank and called police. The responding officer suggested that Usher pay Hartke what she owed. When Usher indicated that she did not have enough funds in her account to pay Hartke, he agreed to accept $3,000 to satisfy Usher's bill.

{¶ 8} The board concluded that Hartke's conduct had violated Prof.Cond.R. 1.2(e) ("Unless otherwise required by law, a lawyer shall not present, participate in presenting, or threaten to present criminal charges or professional misconduct allegations solely to obtain an advantage in a civil matter") and 8.4(h) (a lawyer is prohibited from engaging in conduct that adversely reflects on the lawyer's fitness to practice law). We adopt the board's findings of fact and misconduct.

## II. Sanction

{¶ 9} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli,* 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21. Because each disciplinary case is unique, we are not limited to the factors specified in the rule but may take into account "all relevant factors" in determining what sanction to impose. BCGD Proc.Reg. 10(B).

{¶ 10} The board found several mitigating factors, including the fact that Hartke made full disclosure to the panel, that his misconduct in this matter was a one-time incident, and that his misconduct in this case is inconsistent with his general character.

**{¶ 11}** However, the board also found several aggravating factors, including Hartke's previous suspension from the practice of law for one year. *Cincinnati Bar Assn. v. Hartke,* 67 Ohio St.3d 65, 616 N.E.2d 186 (1993). Also considered to be aggravating factors were Hartke's selfish motive, the vulnerability of his client and the emotional harm she suffered, and his failure to fully acknowledge the wrongful nature of his conduct, characterizing it instead as a mere technical violation of his ethical obligations.

**{¶ 12}** The board recommended that Hartke be suspended for a period of six months, all stayed on the conditions that he commit no further violations during the suspension and that he pay the costs of prosecuting this matter. Under the particular circumstances in this case, however, we hold that the aggravating factors outweigh the mitigating circumstances and justify an actual suspension.

**{¶ 13}** In its discussion of the appropriate sanction in this case, the board cited *Cincinnati Bar Assn. v. Cohen*, 86 Ohio St.3d 100, 712 N.E.2d 118 (1999), and *Butler Cty. Bar Assn. v. Cunningham*, 118 Ohio St.3d 188, 2008-Ohio-1979, 887 N.E.2d 343. In both cases, the attorney made a single threat of criminal action against a client to gain an advantage in a civil case, and we imposed a public reprimand for both attorneys.

**{¶ 14}** In support of a stayed suspension, the board cited *Akron Bar Assn. v. Miller*, 130 Ohio St.3d 1, 2011-Ohio-4412, 955 N.E.2d 359, and *Disciplinary Counsel v. Landis*, 124 Ohio St.3d 508, 2010-Ohio-927, 924 N.E.2d 361. In *Miller,* without making any physical contact, the attorney made inappropriate sexual comments to his client, including that she perform a sexual act on him. *Id.* at ¶ 6-7. In *Landis*, the attorney pleaded guilty to operating a vehicle while under the influence of alcohol or a drug of abuse. *Id.* at ¶ 4. In both cases, we held that the attorneys had engaged in conduct adversely reflecting on their fitness to

practice law and we imposed a stayed suspension as a sanction. *Miller* at ¶ 20; *Landis* at ¶ 8.

**{¶ 15}** We find that all the aforementioned cases are distinguishable from the instant case. In *Cohen*, *Cunningham*, and *Landis,* there were no aggravating factors. *Cohen*, 86 Ohio St.3d 100, 712 N.E.2d 118; *Cunningham*, 118 Ohio St.3d 188, 2008-Ohio-1979, 887 N.E.2d 343, ¶ 9; *Landis* at ¶ 7. In the instant case, Hartke acted with a selfish motive, caused emotional harm when he took advantage of a vulnerable client, and failed to fully acknowledge the wrongful nature of his conduct.

**{¶ 16}** In *Miller*, the attorney made inappropriate sexual comments to a client during a phone call. We held that the client's vulnerability and the attorney's selfish motive were aggravating factors. *Id.,* 130 Ohio St.3d 1, 2011-Ohio-4412, 955 N.E.2d 359, ¶ 16. However, the attorney in *Miller* clearly admitted the wrongful nature of his conduct, calling it " 'absolutely sickening,' an 'abomination,' and 'reprehensible.' " *Id.* at ¶ 12. We also found that a mental illness contributed to the attorney's conduct in *Miller*, which was an additional mitigating factor. *Id.* at ¶ 13.

**{¶ 17}** In the instant case, Hartke also acted with a selfish motive and took advantage of a vulnerable client. Furthermore, unlike the attorney in *Miller*, Hartke was aware that his client had been involved with a difficult divorce case. Hartke threatened his client with criminal action and testified that he told her, "You could be arrested. You can go to jail. You could lose your kids." And Hartke made these threats in person and in the presence of the client's six-year-old child. Under these circumstances, we believe that the client in this case was in a more vulnerable position than the client in *Miller* and suffered more emotional damage. We have repeatedly held that " '[t]he more vulnerable the client, the heavier is the obligation upon the attorney not to exploit the situation

for his own advantage.' " *Disciplinary Counsel v. Freeman,* 106 Ohio St.3d 334, 2005-Ohio-5142, 835 N.E.2d 26, ¶ 13, quoting *Disciplinary Counsel v. Booher*, 75 Ohio St.3d 509, 510, 664 N.E.2d 522 (1996); *Disciplinary Counsel v. Moore,* 101 Ohio St.3d 261, 2004-Ohio-734, 804 N.E.2d 423, ¶ 17.

{¶ 18} Further, unlike the attorney in *Miller*, Hartke has not wholeheartedly admitted that his conduct was wrongful, but instead has claimed that it was only a technical violation of his ethical obligations. Failing to admit wrongdoing only "compound[s] [an attorney's] misdeeds." *Disciplinary Counsel v. Heiland,* 116 Ohio St.3d 521, 2008-Ohio-91, 880 N.E.2d 467, ¶ 45.

{¶ 19} Finally, Hartke was not suffering from any mental illness, which was a mitigating factor in *Miller*.

{¶ 20} Consequently, we hold that the particular aggravating circumstances distinguish this case from the case law relied upon by the board in support of recommending a stayed suspension. Accordingly, we suspend Hartke from the practice law for a period of six months. Costs are to be paid by Hartke.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, CUPP, and MCGEE BROWN, JJ., concur.

LANZINGER, J., dissents and would impose a six-month stayed suspension.

_____

Waite, Schneider, Bayless & Chesley and Jean M. McCoy, for relator.

John H. Burlew, for respondent.

_____