DAYTON BAR ASSOCIATION *v.* O'NEAL.

[Cite as *Dayton Bar Assn. v. O'Neal,* 134 Ohio St.3d 361, 2012-Ohio-5634.]

*Attorneys at law—Misconduct—Mishandling and neglect of probate matters—*
*Age-associated cognitive decline does not qualify as mitigating factor—*
*Two-year suspension with 18 months stayed.*

(No. 2012-0306—Submitted April 24, 2012—Decided December 5, 2012.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and
Discipline of the Supreme Court, No. 11-042.

_____

**Per Curiam**.

{¶ 1} Respondent, Raymond Walter O'Neal Sr. of Dayton, Ohio, Attorney Registration No. 0031153, was admitted to the practice of law in Ohio in May 1981. On May 24, 1995, we suspended his license for six months, stayed the suspension, and placed him on a two-year probation period after finding that he had handled a client's legal matter without adequate preparation and neglected an entrusted matter. *Dayton Bar Assn. v. O'Neal*, 72 Ohio St.3d 234, 648 N.E.2d 1344 (1995). On July 9, 1997, we terminated his probation. *Dayton Bar Assn. v. O'Neal*, 79 Ohio St.3d 1223, 681 N.E.2d 1335 (1997).

{¶ 2} On April 11, 2011, relator, Dayton Bar Association, charged O'Neal with multiple violations of the Rules of Professional Conduct for his alleged mishandling and neglect of two probate matters for the same client. O'Neal answered, and in September 2011, a three-member panel of the Board of Commissioners on Grievances and Discipline conducted a hearing, where O'Neal testified and the parties submitted stipulations of fact and misconduct. As a sanction, the parties jointly recommended a one-year suspension with six months stayed on conditions.

**{¶ 3}** During the hearing, the panel became concerned about O'Neal's cognitive abilities and memory. At that time, O'Neal was 71 years old, and he repeatedly referred to his confusion as an explanation for his neglect of the probate matters. The panel requested that O'Neal submit to a psychiatric examination by a qualified health professional, and he agreed. In November 2011, the panel-appointed physician filed his independent report, which diagnosed O'Neal with "age-associated cognitive decline."

**{¶ 4}** After submission of the physician's report and the parties' final arguments, the panel determined that O'Neal had committed some of the charged misconduct, dismissed the remaining allegations, and recommended a two-year suspension, with 18 months stayed on the conditions that he complete ten hours of continuing legal education in law-office management and probate law, submit to an additional psychiatric evaluation to show that there has been no further decline in his cognitive functioning, and serve two years of monitored probation. The board adopted the panel's findings of fact and misconduct but recommended that O'Neal be suspended for two years, with the entire suspension stayed on the conditions that he (1) complete the continuing-legal-education courses as recommended by the panel, (2) serve two years of monitored probation, and (3) contact the Ohio Lawyers Assistance Program ("OLAP"), undergo an assessment, and enter into a contract with OLAP under the conditions and for the duration that it deems appropriate. O'Neal has consented to the findings and recommended sanction, and relator has not filed any objections.

**{¶ 5}** We adopt the board's findings of fact and misconduct, but for the reasons that follow, we agree with the panel that a two-year suspension, with 18 months stayed on conditions, is the appropriate sanction. In addition, we condition O'Neal's reinstatement upon his completing a geriatric psychological assessment and his submitting proof that he is fit to return to the competent, ethical, and professional practice of law.

**Misconduct**

**{¶ 6}** In March 2008, Alicia Wingo retained O'Neal to represent her in two probate cases involving the estates of her uncle, George Taylor, and her father, Albon Wingo. Alicia Wingo was the representative of both estates, and she paid O'Neal a $100 initial consultation fee. In May 2008, Wingo paid O'Neal a $2,000 retainer. At that time, O'Neal did not have—and therefore did not deposit the money into—a client trust account. Over the next year, O'Neal neglected the two probate matters by persistently missing court deadlines, failing to appear for court hearings, and failing to keep in contact with Wingo, and he was eventually held in contempt by the probate court.

**{¶ 7}** Specifically, in the Taylor case, O'Neal missed three consecutive deadlines to file the commissioner's report, and he failed to appear for the ensuing show-cause hearing. The probate court cited him and fined his client, who eventually filed the report without O'Neal's assistance. Wingo, however, wrongfully distributed estate funds to herself and her brother, and the court ordered that she recover the funds and file an amended report. But neither O'Neal nor Wingo filed the amended report, and the court issued two additional citations for missed deadlines. Similarly, in the Albon Wingo probate case, the court issued five citations to O'Neal for missing deadlines to file the estate's inventory report and account reports.

**{¶ 8}** On April 3, 2009, Wingo sent O'Neal a letter terminating their attorney-client relationship and demanding the return of her money and files. O'Neal received the letter by certified mail, but he did not refund the money or seek to withdraw as counsel. Instead, on April 29, 2009, he filed a commissioner's report in the Taylor case, which showed a distribution of legal and commissioner fees that had not been previously approved by the court. The court immediately ordered O'Neal to appear for a May 26, 2009 show-cause hearing regarding why he and his client had not followed the court's prior orders.

By the time of the May hearing, however, Wingo had obtained new counsel, who assumed responsibility for the case.

{¶ 9} O'Neal's participation in the probate matters did not end there. In December 2009, Wingo and her new counsel filed a fiduciary's account report in her father's case, which listed a $3,050 distribution to O'Neal. These fees had not been approved by the probate court, as required by local rule, and the court ordered O'Neal to appear for a February 1, 2010 hearing. O'Neal failed to appear but later requested additional time to submit applications for attorney fees in both the Albon Wingo and Taylor probate cases. O'Neal, however, did not timely file the fee applications.

{¶ 10} The court's magistrate thereafter determined that O'Neal was not entitled to any attorney fees and ordered that he return all fees he had obtained from Wingo. Upon receipt of O'Neal's motion to submit fees "out-of-time," the magistrate gave him one final opportunity to justify his fee distribution. However, O'Neal again failed to appear for the scheduled hearing, and on July 9, 2010, the magistrate reordered O'Neal to return all fees to Wingo. By March 16, 2011, O'Neal had not returned his client's money, and the probate judge found him in contempt. O'Neal then disgorged his client's funds, and his sentence was set aside.

{¶ 11} The parties stipulated, the board found, and we agree that O'Neal's conduct violated Prof.Cond.R. 1.1 (requiring a lawyer to provide competent representation to a client), 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.15(a) (requiring a lawyer to hold property of clients in an interest-bearing client trust account, separate from the lawyer's own property), and 1.15(c) (requiring a lawyer to deposit advance legal fees and expenses into a client trust account, to be withdrawn by the lawyer only as fees are earned or expenses incurred). In addition, although the parties did not stipulate to the violation, the board found that O'Neal's conduct violated Prof.Cond.R. 1.15(d)

(requiring a lawyer to promptly deliver funds or other property that the client is entitled to receive), and we agree.

{¶ 12} Relator also charged O'Neal with violations of Prof.Cond.R. 1.4 (requiring a lawyer to reasonably communicate with a client), 1.16(d) (requiring a lawyer withdrawing from representation to take steps reasonably practicable to protect a client's interest), 3.4(c) (prohibiting a lawyer from knowingly disobeying an obligation under the rules of a tribunal), 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice). Relator requested and the board recommended dismissal of those allegations. Because relator has not proven the allegations by clear and convincing evidence, we hereby dismiss the charges.

### Sanction

{¶ 13} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10. *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

{¶ 14} We have already addressed how O'Neal breached ethical duties owed to his client. As aggravating factors, the board found a pattern of misconduct and multiple offenses. *See* BCGD Proc.Reg. 10(B)(1)(c) and (d). As mitigating factors, the board found that O'Neal (1) did not act with a dishonest or selfish motive, (2) made restitution, although not timely, (3) displayed a cooperative attitude toward the disciplinary proceeding, and (4) demonstrated good character and reputation. *See* BCGD Proc.Reg. 10(B)(2) (b), (c), (d), and

(e).[1]  Indeed, as to the fourth factor, the board noted that throughout his career, O'Neal has represented underserved individuals who might not otherwise be able to hire legal counsel, and such services are valued by the Dayton community and the courts.  Further, Judge Timothy N. O'Connell of the Montgomery County Court of Common Pleas testified to O'Neal's good character, stating that he is "industrious, very honest and has an excellent work ethic demonstrating commitment to his clients and his community."

{¶ 15} O'Neal's age-associated cognitive decline does not qualify as a mitigating factor under BCGD Proc.Reg. 10(B)(2)(g).  The panel-appointed physician, David G. Bienenfeld, M.D., reported that there is no treatment for the condition, and under BCGD Proc.Reg. 10(B)(2)(g)(iii), a "sustained period of successful treatment" is a necessary element for any mental disability to be considered in mitigation.  We nonetheless find that the diagnosis is relevant to determining the appropriate sanction.  As we have previously explained, each disciplinary case is unique, and we are not limited to the factors specified in the rule but may take into account "all relevant factors" in determining what sanction to impose.  *Cincinnati Bar Assn. v. Hartke*, 132 Ohio St.3d 116, 2012-Ohio-2443, 969 N.E.2d 1189, ¶ 9, quoting BCGD Proc.Reg. 10(B); *see also Disciplinary Counsel v. Parker*, 116 Ohio St.3d 64, 2007-Ohio-5635, 876 N.E.2d 556, ¶ 86 ("[W]e frequently do weigh concerns not specified [in BCGD Proc. Reg. 10(B)]").

{¶ 16} According to the panel report, O'Neal repeatedly testified that he had "confusion" about what was required by the probate court and about Wingo's termination of his legal services.  The panel found that O'Neal's answers often rambled, and he referred to irrelevant information, was vague, and was difficult to

---

1. In mitigation, the board also noted an "absence of a disciplinary record."  However, as noted above, we found that O'Neal had engaged in professional misconduct in *Dayton Bar Assn. v. O'Neal*, 72 Ohio St.3d 234, 648 N.E.2d 1344 (1995).  We therefore reject the board's reliance on this mitigating factor.

follow. The panel further reported that he had difficulty remembering his age. The panel was in the best position to assess O'Neal's testimony, and we defer to their description of his demeanor and mental state. *See, e.g.*, *Cuyahoga Cty. Bar Assn. v. Wise*, 108 Ohio St.3d 164, 2006-Ohio-550, 842 N.E.2d 35, ¶ 24 ("Unless the record weighs heavily against a hearing panel's findings, we defer to the panel's credibility determinations, inasmuch as the panel members saw and heard the witnesses firsthand").

**{¶ 17}** Dr. Bienenfeld reported that O'Neal's condition does not meet the definition of a "mental illness" in R.C. 5122.01(A). Instead, age-associated cognitive decline is defined as "an objectively identified decline in cognitive functioning consequent to the aging process that is within normal limits given the person's age." Individuals with this condition "may report problems remembering names or appointments or may experience difficulty in solving complex problems." According to Dr. Bienenfeld, O'Neal's ability to conduct a normal everyday life is not impaired, but he may be affected in "specific areas in which an attorney must function above the cognitive levels required for everyday life, including keeping track of multiple simultaneous tasks, adapting quickly to changing circumstances, [and] integrating disparate types of information towards a legal task." Further, Dr. Bienenfeld reported that O'Neal "does demonstrate cognitive impairment that likely impairs his ability to deliver quality legal services."

**{¶ 18}** Because the condition is part of the "normal aging process," Dr. Bienenfeld concluded that "it is not classified as a disease, and there is no treatment." If O'Neal continues to practice law, Dr. Bienenfeld recommended either periodic monitoring or more rigorous neuropsychological evaluations at yearly intervals to determine whether there is any further decline in cognitive abilities.

{¶ 19} We have consistently explained that " 'in determining the appropriate length of the suspension and any attendant conditions, we must recognize that the primary purpose of disciplinary sanctions is not to punish the offender, but to protect the public.' " *Disciplinary Counsel v. Agopian*, 112 Ohio St.3d 103, 2006-Ohio-6510, 858 N.E.2d 368, ¶ 10, quoting *Disciplinary Counsel v. O'Neill*, 103 Ohio St.3d 204, 2004-Ohio-4704, 815 N.E.2d 286, ¶ 53. That purpose is served by suspending O'Neal from the practice of law for two years, with 18 months stayed, and imposing conditions on reinstatement. While relator did not show that O'Neal intended his client to suffer any harm—and O'Neal has acknowledged his wrongdoing, demonstrated his good character, and cooperated in the disciplinary investigation—Dr. Bienenfeld reported that no treatment is available for age-associated cognitive decline and O'Neal's cognitive impairment "likely" impairs his ability to provide quality legal services. Therefore, to protect the public and maintain the integrity of the legal profession, any future reinstatement must be conditioned on O'Neal's undergoing another evaluation and submitting proof that his age-associated cognitive decline does not prevent him from competently and ethically practicing law. If O'Neal meets the conditions of reinstatement, an on-going OLAP contract, which should assist him in addressing and managing the identified aging issues, combined with the monitoring, reporting, and other probationary restrictions imposed by Gov.Bar R. V(9) on his professional relationships, will allow him to practice law and continue to serve the courts and his community without posing a threat to the public.

{¶ 20} Based on the foregoing, Raymond Walter O'Neal Sr. is hereby suspended from the practice of law in the state of Ohio for two years, with 18 months stayed on the conditions that he (1) commit no further misconduct and (2) complete a minimum of ten hours of continuing legal education in topics related to law-office management for solo practitioners and estate and probate law in addition to the requirements of Gov.Bar R. X(3)(G). If O'Neal fails to comply

with the conditions of the stay, the stay will be lifted, and O'Neal shall serve the entire two-year suspension. In applying for reinstatement, O'Neal shall (1) submit evidence from a qualified medical professional that he completed a geriatric psychological assessment and provide proof to a reasonable degree of medical certainty that he is fit to return to the competent, ethical, and professional practice of law and (2) submit evidence that he has entered into a contract with OLAP to address aging issues—the duration of which shall be determined by OLAP—and has complied with all of OLAP's recommendations. If reinstated, O'Neal shall serve a two-year probation under the supervision of a monitoring attorney in accordance with Gov.Bar R. V(9) to review his files and ensure compliance with ethical and professional standards of practice. Costs are taxed to O'Neal.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

Christopher R. Conard, Bar Counsel, for relator.

Gary J. Leppla, for respondent.

_____