[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Wexler,* Slip Opinion No. 2014-Ohio-2952.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-2952

DISCIPLINARY COUNSEL *v.* WEXLER.

[Until this opinion appears in the Ohio Official Reports advance sheets,

it may be cited as *Disciplinary Counsel v. Wexler,*

Slip Opinion No. 2014-Ohio-2952.]

*Attorneys—Misconduct—Knowingly making a false statement of material fact in a*

*disciplinary matter—Six-month suspension stayed on condition.*

(No. 2013-1250—Submitted October 9, 2013—Decided July 9, 2014.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and

Discipline of the Supreme Court, No. 2012-085.

_____

**Per Curiam**.

{¶ 1} Respondent, Ilan Wexler of Youngstown, Ohio, Attorney Registration No. 0005859, was admitted to the practice of law in Ohio in 1980.

{¶ 2} In a complaint certified to the Board of Commissioners on Grievances and Discipline on December 6, 2012, relator, disciplinary counsel, alleged that Wexler violated the Disciplinary Rules of the Code of Professional

Responsibility and the Rules of Professional Conduct by engaging in a sexual relationship with a client, providing her with gifts and financial assistance, and making false and misleading statements during the course of relator's disciplinary investigation.[1]

{¶ 3} A panel of the board conducted a hearing and, at the conclusion of relator's evidence, unanimously voted to dismiss alleged violations of DR 1-102(A)(5) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice), 5-101(A)(1) (prohibiting a lawyer from accepting employment if the exercise of the lawyer's professional judgment will be or reasonably may be affected by the lawyer's personal interests), and 5-103(B) and Prof.Cond.R. 1.8(e) (both prohibiting a lawyer from providing financial assistance to a client for expenses other than litigation costs) and 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), based on relator's failure to prove by clear and convincing evidence that Wexler's conduct violated these rules.

{¶ 4} At the conclusion of the hearing, the panel also voted to dismiss alleged violations of DR 1-102(A)(6) and Prof.Cond.R. 8.4(h) (both prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law) and an alleged violation of Prof.Cond.R. 1.8(j) (prohibiting a lawyer from soliciting or engaging in sexual activity with a client unless a consensual sexual relationship existed prior to the client-lawyer relationship), again based on relator's failure to prove them by clear and convincing evidence.

{¶ 5} Thus the only allegation remaining is that Wexler made false statements of material fact in connection with relator's investigation of the underlying grievance, in violation of Prof.Cond.R. 8.1(a) (prohibiting knowingly

---

[1] Relator charged respondent with misconduct under applicable rules for acts occurring before and after February 1, 2007, the effective date of the Rules of Professional Conduct, which supersede the Disciplinary Rules of the Code of Professional Responsibility.

making a false statement of material fact in connection with a disciplinary matter). The panel found by clear and convincing evidence that Wexler had violated Prof.Cond.R. 8.1(a) by making a false and misleading statement to relator regarding a December 2010 hotel bill and recommended that he be publicly reprimanded for that conduct.

{¶ 6} The board adopted the panel's findings of fact and conclusions of law but recommended that Wexler be suspended from the practice of law for six months, all stayed on the condition that he commit no further misconduct. Neither party has objected to the board's report.

{¶ 7} We adopt the board's findings of fact and conclusions of law and suspend Wexler from the practice of law in Ohio for six months, all stayed on the condition that he engage in no further misconduct.

**Misconduct**

{¶ 8} The board found that Wexler had represented Kietsa Moore-Brown in four legal matters from March 1994 through April 2011: three personal-injury matters from approximately March 1994 through March 1996, May 1997 through April 2000, and April 2006 through April 2011, and a collection matter from approximately March 2009 through August 2009.

{¶ 9} In her November 2011 grievance, Moore-Brown alleged that she began to have an affair with Wexler before he resolved her first personal-injury matter in March 1996. In support of this allegation, she submitted copies of phone records and hotel receipts, including a receipt for a December 23, 2010 stay at a Holiday Inn Express in Newton Falls, Ohio, that indicated that the room had been booked in Wexler's name.

{¶ 10} In his January 27, 2012 written response to the grievance, Wexler did not answer the allegation that he had had an affair with Moore-Brown, though he later consistently and adamantly denied that allegation. Instead, he suggested that the December 23, 2010 hotel receipt was fraudulent, stating, "With respect to

the hotel bill that allegedly has my name on it * * * it is interesting to note that my first name is misspelled on the alleged bill. Furthermore, the address given is not my home address, rather it is my brother's address." And during a May 8, 2012 interview with relator, Wexler failed to identify the credit card that had been used to pay for the hotel stay as his card and suggested that his card had been subject to fraudulent use in the past. Relator, however, subpoenaed additional documents from the hotel and discovered that Wexler had personally signed and initialed the registration paperwork for the December 23, 2010 stay.

{¶ 11} At his July 24, 2012 deposition, Wexler admitted that his written response to Moore-Brown's grievance was not accurate and was misleading. He testified that his name was on the hotel bill because he had paid for the room and that he had provided his brother's address to the hotel clerk in an effort to hide the transaction from his wife. He also admitted that he had "skirt[ed] around the issue" of whether his credit card had been used to pay for the hotel stay despite "knowing that it was [his] credit card."

{¶ 12} The board found that these facts clearly and convincingly demonstrate that Wexler knowingly made a false statement of material fact in connection with a disciplinary matter, in violation of Prof.Cond.R. 8.1(a).

**Sanction**

{¶ 13} When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

{¶ 14} As aggravating factors, the board found that Wexler acted with a dishonest motive or a selfish motive, engaged in a pattern of misconduct

involving multiple lies on two separate occasions, and submitted false statements or engaged in other deceptive practices during the disciplinary process. *See* BCGD Proc.Reg. 10(B)(1)(b), (c), and (f). In mitigation, the board found that Wexler did not have a prior disciplinary record and that he presented evidence of his good character and reputation apart from this misconduct. *See* BCGD Proc.Reg. 10(B)(2)(a) and (e). The board also attributed mitigating effect to Wexler's full and free disclosure to the board beginning with his July 24, 2012 deposition. *See* BCGD Proc.Reg. 10(B)(2)(d). In support of its recommended sanction of a public reprimand, the panel cited *Cleveland Metro. Bar Assn. v. Zaffiro*, 127 Ohio St.3d 5, 2010-Ohio-4830, 935 N.E.2d 836. Zaffiro failed to inform a client that he did not carry professional liability insurance and then falsely led relator to believe that he did carry such insurance. *Id.* at ¶ 2, 8. In addition to a violation of Prof.Cond.R. 8.1(a), Zaffiro also stipulated that his conduct violated Prof.Cond.R. 8.1(b) and Gov.Bar R. V(4)(G) (both requiring a lawyer to cooperate with a disciplinary investigation) and DR 1-104(A) (requiring a lawyer to disclose to the client that the lawyer lacks professional liability insurance). The parties stipulated that a six-month stayed suspension was the appropriate sanction. *Id.* at ¶ 4, 9. But after recognizing that Zaffiro had acknowledged his misconduct, promptly assumed responsibility for the consequences of his alleged malpractice in a small-claims matter, and rectified his initial failure to cooperate with the relator's investigation, we adopted the board's recommendation that he be publicly reprimanded for his misconduct. *Id.* at ¶ 10-11.

{¶ 15} The board cited *Akron Bar Assn. v. DeLoach*, 130 Ohio St.3d 153, 2011-Ohio-4201, 956 N.E.2d 811, in support of its recommendation that we impose a six-month fully stayed suspension for Wexler's misconduct. DeLoach violated Prof.Cond.R. 8.4(c) by submitting re-creations of letters that she had purportedly sent to her client without disclosing to relator that they were not

copies of the originals. *Id.* at ¶ 6. She told relator that she had found hard copies of the original letters but that she retyped them to get them to the investigator more quickly. *Id.* After metadata revealed that DeLoach had created the documents on the same day that she had submitted them to relator, she admitted that she had re-created the documents because she had been unable to locate the original documents. *Id.* at ¶ 6-7. She later submitted the original documents to the relator, who confirmed that the re-creations were substantively the same as the originals. *Id.* at ¶ 13. Thus, DeLoach did not mislead the investigator and did not gain any unfair advantage as a result of her actions. *Id.*

{¶ 16} In considering the appropriate sanction for DeLoach's misconduct, we recognized that conduct involving dishonesty, fraud, deceit, or misrepresentation typically results in an actual suspension from the practice of law. *Id.* at ¶ 12. Finding, however, that DeLoach did not have a prior disciplinary record, had shown remorse for her actions, and had taken steps to improve her organizational system, we imposed a six-month suspension, all stayed on the condition that she serve two years of monitored probation. *Id.* at ¶ 11-15.

{¶ 17} We find that Wexler's affirmative misrepresentations to relator during the course of his investigation and his subsequent efforts to acknowledge and correct those false or misleading statements are most comparable to the misconduct at issue in *DeLoach*. And because he has no prior disciplinary record, has presented evidence of his good character and reputation apart from this misconduct, has made a full and free disclosure to the board, and has caused no harm to any client as a result of this conduct, we agree that a six-month suspension, all stayed on the condition that he engage in no further misconduct, is the appropriate sanction here.

{¶ 18} Accordingly, Ilan Wexler is suspended from the practice of law in Ohio for six months, all stayed on the condition that he engage in no further

misconduct. If he fails to comply with the condition of the stay, the stay will be lifted and he will serve the full six-month suspension. Costs are taxed to Wexler.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

Scott J. Drexel, Disciplinary Counsel, and Catherine M. Russo, Assistant Disciplinary Counsel, for relator.

Monica A. Sansalone and Jamie A. Price, for respondent.

_____