**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Derryberry,* **Slip Opinion No. 2017-Ohio-8767.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-8767

DISCIPLINARY COUNSEL *v.* DERRYBERRY.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Derryberry,* Slip Opinion No. 2017-Ohio-8767.]**

*Attorneys—Misconduct—Failure to keep client reasonably informed about status of matter—Failure to comply as soon as practicable with client's reasonable requests for information—Knowingly making false statements of material fact in connection with a disciplinary matter—One year suspension, fully stayed on the condition that respondent commit no further misconduct.*

(No. 2017-1088—Submitted October 17, 2017—Decided December 5, 2017.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2015-033.

_____

**Per Curiam.**

**{¶ 1}** Respondent, Quentin Martin Derryberry II, of Wapakoneta, Ohio, Attorney Registration No. 0024106, was admitted to the practice of law in Ohio in 1970. In 1987, this court suspended him on an interim basis after receiving notice that a federal court had convicted him of perjury for falsely testifying at a bankruptcy hearing. In 1990, we suspended him for two years for the conduct that led to his conviction but granted him credit for time served under his interim suspension. *See Disciplinary Counsel v. Derryberry*, 54 Ohio St.3d 107, 108-109, 561 N.E.2d 926 (1990).

**{¶ 2}** In 2015, relator, disciplinary counsel, charged him with mishandling a client's custody matter and making false statements during the disciplinary process. Derryberry entered into factual stipulations with relator but initially maintained that his conduct did not violate any of the professional-conduct rules. After a hearing, the Board of Professional Conduct found that Derryberry engaged in most of the charged misconduct and recommended that we suspend him for one year, with six months conditionally stayed. Derryberry objects to the board's findings, arguing for a fully stayed suspension or public reprimand.

**{¶ 3}** For the reasons explained below, we sustain Derryberry's objections, in part, and hold that a one-year suspension, stayed in its entirety, is the appropriate sanction in this case.

## Misconduct

*Derryberry's representation of Linda Moore*

**{¶ 4}** In 2013, Derryberry briefly represented Linda Moore in a custody matter involving her great-grandson, D.S. At the time, D.S. lived with Moore in Lima, although D.S.'s mother had legal custody of the child. Two of D.S.'s siblings lived in Wapakoneta with their grandmother, Melissa Sharp, and D.S.'s third sibling lived with the children's mother in Indiana. In September 2013, Sharp, through counsel, filed pleadings seeking legal custody of the two children living

with her, and on October 22, 2013, she moved to intervene in D.S.'s pending paternity case in order to seek legal custody of him.

{¶ 5} After learning about Sharp's motion, Moore met with Derryberry on October 29, 2013, and retained him to represent her in D.S.'s proceeding. Moore paid him a $1,000 retainer, and he asked her to gather documents that he would need to prepare a custody petition. Two days later, Moore brought the requested documents to Derryberry's office. On November 1, 2013, D.S.'s mother faxed additional documentation to Derryberry.

{¶ 6} On November 14, 2013, the juvenile court granted Sharp's motion to intervene in D.S.'s case and Sharp filed a motion seeking legal custody of D.S. and a motion for reallocation of parental rights and responsibilities. Although D.S.'s mother was served with Sharp's motion on December 2, 2013, she did not submit a response. On December 18, 2013, the juvenile court designated Sharp as D.S.'s temporary residential parent and legal custodian. Derryberry never filed any document on Moore's behalf. At Derryberry's disciplinary hearing, Moore and Derryberry offered conflicting accounts of why he did not immediately file a motion to intervene in D.S.'s proceeding.

{¶ 7} Moore testified that she specifically retained Derryberry to assist her in obtaining custody of the child and that at her second meeting with him, she told him that timing was important because Sharp had already filed documents seeking custody. According to Moore, Derryberry indicated that he would contact Sharp's attorney, and she assumed that he would then file the necessary paperwork. Moore claimed that over the next several weeks, she called Derryberry's office numerous times and left messages inquiring about the status of her case, but he never returned her phone calls. On December 2, 2013, she attended a court proceeding regarding one of D.S.'s siblings and asked Sharp's attorney if Derryberry had contacted him. After Sharp's counsel indicated that he had not heard from Derryberry, she went to the clerk's office and discovered that he had not filed anything in D.S.'s case.

Moore testified that she then went to Derryberry's office and told his assistant that she was terminating his services.

**{¶ 8}** Derryberry testified, however, that it was not necessary or appropriate for Moore to immediately file a motion to intervene in D.S.'s case. According to Derryberry, Moore initially advised him that she did not want to take legal custody of D.S. away from the child's mother, who had authorized D.S. to live with Moore. Rather, Moore only wanted to ensure that Sharp did not obtain custody of the child. For various reasons—including that he believed Moore was essentially aligned with D.S.'s mother and that the local children-services board had approved of D.S. living with Moore—Derryberry decided that it was in Moore's best interest to refrain from intervening in D.S.'s proceeding unless and until (1) the court permitted Sharp to intervene and (2) Sharp served D.S.'s mother with any potential motion seeking custody or a change in allocation of parental rights. And because Sharp did not serve D.S.'s mother with the custody motion until December 2, 2013—around the same time that Moore terminated him—he never filed anything on her behalf.

**{¶ 9}** For her part, Moore testified that Derryberry never informed her that it was premature to file a motion to intervene, and because she believed that he had failed to take any action on her behalf, she requested a full refund of her $1,000 retainer. In February 2014, Derryberry sent her a $300 check with an invoice showing that he had performed 3.5 hours of work at the rate of $200 an hour. In response, Moore filed the grievance that commenced this disciplinary proceeding. Over a year later—and after relator had filed his disciplinary complaint—Derryberry refunded the remainder of Moore's retainer.

**{¶ 10}** Based on this evidence, the board found that by failing to take any action to help Moore obtain temporary legal custody of D.S. between October 29 and December 2, 2013, Derryberry violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client). In addition, the board found that by failing to communicate with Moore regarding the status of her matter

4

despite Moore's repeated inquiries, Derryberry violated Prof.Cond.R. 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of a matter) and 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with reasonable requests for information from the client).

*Derryberry's false statements during the disciplinary process*

{¶ 11} The board also found that Derryberry made multiple false statements to relator during the investigation into Moore's grievance. Specifically, in a July 2, 2014 letter in response to the grievance, Derryberry stated that he had "counsel[ed] Ms. Moore that it was not necessary and arguably not appropriate" to immediately intervene in D.S.'s proceeding. The board found, however, that Moore was "emphatic in her testimony that [Derryberry] never gave her this advice" and that she retained him with the "expectation that he would be quickly filing a motion to intervene and for custody of [D.S.] on her behalf." The board ultimately found that Moore's testimony on this point was "very credible" and that Derryberry's was "not credible," and the board concluded that Derryberry had "falsely represented" to relator that he had communicated his strategy to Moore as a way to justify his initial inaction.

{¶ 12} The board also determined that Derryberry made a false statement about communicating with Sharp's attorney, Matthew Kentner. In Derryberry's February 2014 invoice to Moore, he charged her for a "telephone call with Matt Kentner." During the disciplinary investigation, relator asked Derryberry when he had communicated with Kentner and what they had discussed. In a February 26, 2015 e-mail, Derryberry told relator that "the conversation with Mr. Kentner would have been early November" and that "[t]he purpose of the call and what was discussed was to help garner an overall understanding of a very complex multi-family situation * * *."

{¶ 13} But at his disciplinary hearing, Derryberry admitted that he never actually spoke with Kentner, and Kentner confirmed that he had not communicated

5

with Derryberry about this matter. Derryberry claimed that he had called Kentner but was unable to reach him or leave a message and that his former legal assistant had simply made an error in listing the call on Moore's invoice. Derryberry further suggested that the intent of his February 26, 2015 e-mail to relator was to explain what he would have discussed with Kentner if he had reached him—not to represent that he had actually communicated with Kentner. In fact, despite the content of his February 26, 2015 e-mail, Derryberry "[c]ategorically" denied that he had ever previously told relator that he had had a telephone conversation with Kentner.

{¶ 14} The board found that Derryberry's statement in his February 26, 2015 e-mail was "knowingly false" and that he also falsely testified at his disciplinary hearing about the content of that e-mail. Based on this evidence, the board found that Derryberry violated Prof.Cond.R. 8.1(a) (prohibiting an attorney from knowingly making a false statement of material fact in connection with a disciplinary matter).

*Derryberry's objections to the board's findings*

{¶ 15} Derryberry challenges only the board's finding that he failed to diligently represent Moore, in violation of Prof.Cond.R. 1.3. He maintains that he had no legal duty to immediately file a motion to intervene in D.S.'s custody case and that if Moore had intervened and filed a motion for temporary custody when he had planned—i.e., after December 2, 2013, the date on which D.S.'s mother was served with Sharp's motion—the juvenile court would have scheduled Moore's and Sharp's conflicting motions for a hearing, rather than granting temporary custody to Sharp on December 18.

{¶ 16} We agree that the evidence relating to the charged Prof.Cond.R. 1.3 violation is not clear and convincing. Prof.Cond.R. 1.3 requires a lawyer to act with reasonable diligence and promptness in representing a client, and the official comments to the rule explain that "[t]he lawyer disciplinary process is particularly concerned with lawyers who consistently fail to carry out obligations to clients or

consciously disregard a duty owed to a client." Prof.Cond.R. 1.3, Comment 3. Although the following is not an exhaustive list, we have previously found attorneys in violation of Prof.Cond.R. 1.3 when they persistently miss deadlines, fail to appear or adequately prepare for court hearings, unreasonably delay a client matter, or destroy a client's legal claim by failing to timely follow through with the representation. *See, e.g.*, *Dayton Bar Assn. v. O'Neal*, 134 Ohio St.3d 361, 2012-Ohio-5634, 982 N.E.2d 692, ¶ 6-7, 11; *Mahoning Cty. Bar Assn. v. Sakmar*, 127 Ohio St.3d 244, 2010-Ohio-5720, 938 N.E.2d 355, ¶ 3-4, 6; *Cincinnati Bar Assn. v. Lawson*, 119 Ohio St.3d 58, 2008-Ohio-3340, 891 N.E.2d 749, ¶ 46-48, 54-55; *Disciplinary Counsel v. Folwell*, 129 Ohio St.3d 297, 2011-Ohio-3181, 951 N.E.2d 775, ¶ 5-11; and *Lorain Cty. Bar Assn. v. Nelson*, 144 Ohio St.3d 414, 2015-Ohio-4337, 44 N.E.3d 268, ¶ 2-4.

**{¶ 17}** The main problem with Derryberry's representation of Moore was that he failed to adequately communicate his legal strategy to his client, not that he consistently failed to carry out his obligations or that he disregarded a specific duty or deadline in the short time period before she terminated him. Indeed, the board recognized that Derryberry's plan could have been "a plausible strategy," but it did not believe his contention that he had communicated that strategy to Moore. In his objections, Derryberry now appears to concede that he failed to ensure that she was aware of and understood his legal strategy—or at least the intended timing of its implementation. Based on this record, we cannot conclude that Derryberry's failure to immediately file a motion to intervene on Moore's behalf amounted to professional misconduct.

**{¶ 18}** We therefore sustain Derryberry's objection and dismiss the charge that he violated Prof.Cond.R. 1.3. However, we adopt the board's findings that he violated Prof.Cond.R. 1.4(a)(3), 1.4(a)(4), and 8.1(a).

**Sanction**

{¶ 19} When imposing sanctions for attorney misconduct, we consider several relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

*Aggravating and mitigating factors*

{¶ 20} The board did not find any mitigating factors in this case. As aggravating factors, the board determined that Derryberry has a prior disciplinary record, committed multiple offenses, and refused to acknowledge the wrongful nature of his misconduct. *See* Gov.Bar R. V(13)(B)(1), (4), and (7).

{¶ 21} In his objections, Derryberry notes that in May 2015—after relator filed his disciplinary complaint but two years before Derryberry's hearing—he refunded the remainder of Moore's retainer and sent her a letter apologizing and acknowledging that he had not met her expectations. As noted above, Derryberry has also conceded that he failed to properly communicate with his client to ensure that she had a thorough understanding of the proceedings.

{¶ 22} Although Derryberry certainly could have refunded Moore's money and acknowledged his misconduct earlier in the disciplinary process, we find that he is entitled to at least some mitigating credit for making restitution and acknowledging his errors. *See, e.g.*, *Erie-Huron Counties Joint Certified Grievance Commt. v. Derby*, 131 Ohio St.3d 144, 2012-Ohio-78, 961 N.E.2d 1124, ¶ 10 (acknowledging that an attorney's refunding most of his clients' money by the date of his disciplinary hearing amounted to a mitigating factor).

*Applicable precedent*

{¶ 23} To support its recommended sanction of a one-year suspension with six months stayed, the board cited a number of cases with similar Prof.Cond.R. 8.1(a) violations, which the board found to be a particularly troubling aspect of this case. For example, the board cited *Cleveland Metro. Bar Assn. v. Azman*, 147 Ohio

Supreme Court of Ohio

St.3d 379, 2016-Ohio-3393, 66 N.E.3d 695, in which we imposed a one-year suspension, with six months conditionally stayed, on an attorney who accessed e-mail accounts of his former employer after his termination, deleted e-mail communications that had potential evidentiary value in a possible legal action, and then lied about his actions under oath in a deposition with relator. The board also cited *Cincinnati Bar Assn. v. Moore*, 143 Ohio St.3d 252, 2015-Ohio-2488, 36 N.E.3d 171, in which we imposed a two-year suspension, with the second year conditionally stayed, on an attorney who had engaged in seven incidents of shoplifting and who had submitted multiple false statements, in letters and under oath, about those incidents to relator. Additionally, the board relied on *Disciplinary Counsel v. Meyer*, 134 Ohio St.3d 180, 2012-Ohio-5487, 980 N.E.2d 1029, in which we imposed an 18-month suspension, with six months conditionally stayed, on an attorney who continued to practice law while under a continuing-legal-education suspension and then made false and misleading statements to relator during the disciplinary process.

{¶ 24} We agree with the board that Derryberry's violation of Prof.Cond.R. 8.1(a) is troubling. But the other misconduct here—that is, Derryberry's failure to adequately communicate with Moore during their brief attorney-client relationship—is not as egregious as the additional misconduct in *Azman*, *Moore*, and *Meyer*, which included destroying evidence, shoplifting, and practicing while under suspension. Accordingly, we conclude that a fully stayed one-year suspension is the appropriate sanction. *See, e.g.*, *Disciplinary Counsel v. Wexler*, 139 Ohio St.3d 597, 2014-Ohio-2952, 13 N.E.3d 1168 (imposing a conditionally stayed six-month suspension on an attorney who made multiple false statements to relator during a disciplinary investigation); *Akron Bar Assn. v. DeLoach*, 130 Ohio St.3d 153, 2011-Ohio-4201, 956 N.E.2d 811 (imposing a stayed six-month suspension and two years of monitored probation on an attorney who re-created client letters as part of her response to a disciplinary grievance); *Akron Bar Assn.*

*v. Tomer*, 138 Ohio St.3d 302, 2013-Ohio-5494, 6 N.E.3d 1133 (imposing a conditionally stayed two-year suspension on an attorney who neglected two client matters, mismanaged and made unauthorized withdrawals from her client trust account, and submitted false evidence during the ensuing disciplinary investigation).

**Conclusion**

{¶ 25} For the reasons explained above, Quentin Martin Derryberry II is suspended from the practice of law in Ohio for one year, with the entire suspension stayed on the condition that he commit no further misconduct. If Derryberry fails to comply with the condition of the stay, the stay will be lifted and he will serve the full one-year suspension. Costs are taxed to Derryberry.

Judgment accordingly.

KENNEDY, FRENCH, O'NEILL, and DEWINE, JJ., concur.

O'CONNOR, C.J., and O'DONNELL and FISCHER, JJ., dissent and would stay six months of respondent's suspension.

_____

Scott J. Drexel, Disciplinary Counsel, for relator.

Quentin M. Derryberry II, pro se.

_____