[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Columbus Bar Assn. v. Jones*, Slip Opinion No. 2021-Ohio-4070.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-4070

COLUMBUS BAR ASSOCIATION *v.* JONES.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Columbus Bar Assn. v. Jones*, Slip Opinion No. 2021-Ohio-4070.]**

*Attorneys at law—Misconduct—Violations of the Rules of Professional Conduct—Making a false statement in a disciplinary investigation, engaging in deceitful conduct, and engaging in conduct that adversely reflects on fitness to practice law—Conditionally stayed six-month suspension.*

(No. 2021-0749—Submitted August 3, 2021—Decided November 18, 2021.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2020-041.

_____

**Per Curiam.**

{¶ 1} Respondent, Eric Alan Jones, of Columbus, Ohio, Attorney Registration No. 0081670, was admitted to the practice of law in Ohio in 2007.

**{¶ 2}** In July 2020, relator, the Columbus Bar Association, charged Jones with making a false statement in a disciplinary investigation, engaging in deceitful conduct, and engaging in conduct that adversely reflects on his fitness to practice law. Jones stipulated to the charged misconduct, and the parties jointly recommended that he be publicly reprimanded for his behavior. After a hearing, a three-member panel of the Board of Professional Conduct dismissed one alleged rule violation, found that Jones had engaged in the remaining stipulated misconduct, and recommended a conditionally stayed six-month suspension. The board issued a report adopting the panel's findings and recommended sanction, and the parties jointly waived objections to the board's report.

**{¶ 3}** Based on our review of the record, we adopt the board's findings of misconduct and recommended sanction, with one modification to the sanction.

**Misconduct**

*Count one—the McKee grievance*

**{¶ 4}** In April 2018, Sean McKee began dating Jones's estranged wife. Jones claims that about a month later, McKee left him a threatening voicemail. McKee is employed in the men's-clothing business and throughout his career, has used "The Haberdasher Club" and "Alphasuit" as brand names for his business. In August 2018, Jones filed articles of incorporation with the Ohio Secretary of State's office for two businesses: "Haberdasher Club, LTD" and "Alpha Suit, LLC." Jones had not contacted McKee about incorporating business entities with those names and was not otherwise involved in the men's-clothing business.

**{¶ 5}** In late 2019, McKee discovered what Jones had done and filed a grievance against him with relator. In response to the grievance, Jones falsely stated that (1) he had filed the articles of incorporation to protect McKee's business interests from "trademark bullying" and (2) he had filed the articles of incorporation for Alpha Suit, L.L.C. to form "a debt purchasing company to purchase charged off

automobile loans from banks" but abandoned the idea and eventually adopted a different name for the company.

{¶ 6} Jones later dissolved the two companies and admitted that he had incorporated the entities to retaliate against McKee for dating his wife. Jones also admitted that his response to the grievance included "after-the-fact, false rationalizations for his harassing conduct." Based on these facts, the parties stipulated and the board found that Jones violated Prof.Cond.R. 8.1(a) (prohibiting a lawyer from knowingly making a false statement of material fact in connection with a disciplinary matter) and 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).

*Count two—text messages to Jones's ex-wife*

{¶ 7} After Jones learned of McKee's grievance, he sent his then ex-wife hostile text messages about the grievance and his financial support of her. One of the messages threatened retaliation against McKee for submitting the grievance. A few months later, Jones sent his ex-wife another text message about the pending disciplinary investigation. The message stated that his law license supported her and their children and that McKee's "false" allegations threatened the family's security.

{¶ 8} Jones admitted that his text messages were improper and that they implied that he would retaliate in response to McKee's grievance. Based on this conduct, the parties stipulated and the board found that Jones's conduct violated Prof.Cond.R. 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to practice law).

{¶ 9} We agree with the board's findings of misconduct.

## Sanction

{¶ 10} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the

aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 11} As aggravating factors, the board found that Jones had had a dishonest or selfish motive and engaged in deceptive practices during the disciplinary process. *See* Gov.Bar R. V(13)(B)(2) and (6). In mitigation, the board found that Jones has no prior disciplinary offenses and had made a timely and good faith effort to rectify the consequences of his misconduct, eventually exhibited a cooperative attitude toward the disciplinary proceedings, submitted evidence attesting to his good character, and undergone other interim rehabilitation. *See* Gov.Bar R. V(13)(C)(1), (3) through (5), and (8). The board also found that Jones had acknowledged the wrongful nature of his misconduct.

{¶ 12} Throughout its report, the board noted some of Jones's personal struggles both before and at the time of his misconduct. In 2004, while in law school, Jones sought help from the Ohio Lawyers Assistance Program ("OLAP") for alcohol abuse and completed a two-year recovery-and-treatment contract. In 2018, Jones relapsed, and in November 2019, he was hospitalized for suicidal thoughts and to undergo detoxification. After his release from the hospital, Jones entered into a new three-year OLAP contract, completed an intensive outpatient program, started attending Alcoholics Anonymous meetings, and commenced counseling. Jones submitted evidence indicating that he had complied with all his treatment recommendations.

{¶ 13} Soon after he was released from the hospital, Jones learned of McKee's grievance. At his disciplinary hearing, Jones testified that when he submitted his response to the grievance, he had just started new medications, was still feeling suicidal, and felt "totally overwhelmed." At the hearing, Jones accepted responsibility for his actions and expressed remorse.

{¶ 14} The board recognized that Jones had been diagnosed with mental and substance-abuse disorders and that he had undergone successful treatment for

4

those conditions. The board concluded, however, that Jones did not establish the existence of a qualifying mitigating disorder pursuant to Gov.Bar R. V(13)(C)(7). Nonetheless, the board credited Jones for his rehabilitative efforts, found his testimony authentic and genuine, and noted that he has a good prognosis to continue ethically practicing law with the support services he has in place.

{¶ 15} Although the parties recommended that Jones be publicly reprimanded, the board concluded that a more severe sanction was necessary "to impress upon [Jones] the importance of honesty and proper conduct as a practicing member of the Ohio bar." The board concluded that a six-month suspension, stayed on conditions—including continued compliance with his OLAP contract and completion of a one-year term of monitored probation—should motivate Jones, assist him on his road to recovery, protect the public, and preserve the public's trust in the legal profession.

{¶ 16} To support its recommendation, the board cited several cases in which we imposed stayed suspensions under comparable circumstances. For example, in *Akron Bar Assn. v. DeLoach*, 130 Ohio St.3d 153, 2011-Ohio-4201, 956 N.E.2d 811, an attorney—as part of her response to a disciplinary grievance—recreated letters that she claimed to have sent her client. When the relator's investigator became suspicious of the letters and further questioned the attorney, she misrepresented why she had retyped the letters. Although we noted that Prof.Cond.R. 8.4(c) violations usually result in an actual suspension, we concluded that the existence of significant mitigating factors—such as the attorney's clean disciplinary record and remorse for her actions—warranted a conditionally stayed six-month suspension. *Id.* at ¶ 13-15.

{¶ 17} Similarly, in *Disciplinary Counsel v. Wexler*, 139 Ohio St.3d 597, 2014-Ohio-2952, 13 N.E.3d 1168, an attorney made false or misleading statements to the relator in the attorney's initial response to a grievance and then again during an interview with the relator a few months later. We concluded that a conditionally

stayed six-month suspension was appropriate considering the mitigating factors present, including the attorney's efforts to acknowledge and correct his false statements, the absence of a prior disciplinary record, evidence of his good character and reputation, his full disclosures to the board, and the absence of harm to any clients as a result of the misconduct. *Id*. at ¶ 17-18.

{¶ 18} Jones engaged in two incidents of deceitful conduct: he filed the articles of incorporation for no legitimate business purpose and then lied about his conduct to relator. Jones also sent inappropriate text messages to his ex-wife implying retaliatory actions in response to the disciplinary grievance that McKee filed against him. As in *DeLoach* and *Wexler*, significant mitigating factors are present here, including Jones's clean disciplinary record, eventual cooperation in the disciplinary process, acknowledgement of his misconduct, good character and reputation, and ongoing rehabilitation and treatment efforts. Considering the balance of aggravating and mitigating factors and the applicable precedent, we agree that a conditionally stayed six-month suspension is the appropriate sanction in this case. We modify the conditions by directing that Jones's monitored probation focus on ethics.

### Conclusion

{¶ 19} For the reasons explained above, Eric Alan Jones is hereby suspended from the practice of law in Ohio for six months with the suspension stayed in its entirety on the conditions that he (1) comply with his OLAP contract for a period of two years or longer if recommended by OLAP, (2) complete a one-year term of monitored probation pursuant to Gov.Bar R. V(21) focused on ethics, (3) refrain from any further misconduct, and (4) pay the costs of these proceedings. If Jones fails to comply with any condition of the stay, the stay will be lifted and he will serve the entire six-month suspension.

Judgment accordingly.

O'CONNOR, C.J., and FISCHER, DONNELLY, and STEWART, JJ., concur.

6

KENNEDY, J., concurs in part and dissents in part, with an opinion joined by DEWINE, J.

BRUNNER, J., not participating.

_____

**KENNEDY, J., concurring in part and dissenting in part.**

{¶ 20} I concur in the majority's conclusion that respondent, Eric Alan Jones, engaged in professional misconduct, and I agree with most of the sanctions this court imposes today. However, I dissent from the portion of the sanction requiring Jones to complete a one-year term of monitored probation "focused on ethics," majority opinion at ¶ 19. "Monitors should be given a framework in which to skillfully examine certain aspects of a respondent's practice, rather than be forced to attempt an all-encompassing, untargeted supervision of the practice." *Disciplinary Counsel v. Harmon*, 158 Ohio St.3d 248, 2019-Ohio-4171, 141 N.E.3d 142, ¶ 57 (Kennedy, J., dissenting). The one-year probation to be "focused on ethics" imposed by the majority is so broad as to be meaningless. It provides no specificity or benchmarks for the monitor or for Jones.

{¶ 21} Jones's offenses are those of human frailty. His misconduct stemmed from a specific source: bitterness about his ex-wife's dating life. He also admitted to alcohol abuse and mental illness. His contract with the Ohio Lawyers Assistance Program ("OLAP") should address his emotional and substance abuse problems. There is no pattern of professional misbehavior alleged here and there are no grievances from clients. "We are ever mindful that the primary purpose of the disciplinary process is not to punish the offender but to protect the public from lawyers who are unworthy of the trust and confidence essential to the attorney-client relationship." *Columbus Bar Assn. v. Kiesling*, 125 Ohio St.3d 36, 2010-Ohio-1555, 925 N.E.2d 970, ¶ 44, citing *Disciplinary Counsel v. Agopian*, 112 Ohio St.3d 103, 2006-Ohio-6510, 858 N.E.2d 368, ¶ 10. The specific bad acts Jones committed involved people who were not his clients. There is no reason to

believe that Jones failed to appreciate that his conduct was unethical. Monitoring by another attorney is unnecessary in this case.

{¶ 22} Therefore, I would suspend Jones from the practice of law in Ohio for six months with the suspension stayed in its entirety on the conditions that he (1) comply with his OLAP contract for two years or longer if recommended by OLAP, (2) refrain from any further misconduct, and (3) pay the costs of these proceedings. Because the majority imposes more, I dissent in part.

DEWINE, J., concurs in the foregoing opinion.

————————————

Anne M. Valentine; Mark C. Collins Co., L.P.A., and Mark C. Collins; and Kent R. Markus, Bar Counsel, and Thomas E. Zani, Deputy Bar Counsel, for relator.

Charles J. Kettlewell, L.L.C., and Charles J. Kettlewell, for respondent.

————————————